Let's just wait a minute and let everyone get settled. Now I'm going to let you pronounce your name because I'm sure to mess it up. Thank you, Your Honor. May it please the Court, Eric Fetcher for the Farmers' Appellants. I'd like to reserve five minutes for rebuttal. This case is about an extensive health care fraud scheme in which a group of chiropractors and other health care providers billed for medical procedures they did not perform or that were unnecessary. The fraud is blamed. For example, in a sample of 497 patients seen by defendants, the records submitted provide that not a single patient was able to move... Now all you're doing is just trying to poison the well. Address the questions that are before us on appeal. Yes, Your Honor. Cutting to the chase then, the District Court erred by denying Farmers' Appellants the lead to amend its complaint under Rule 59E by applying the wrong legal standard and thus prematurely handed Farmers' opportunity to have its case determined on the merits and not just the plebeians. The Court should converse and remand to the District Court. The District Court's application of the wrong legal standard to Farmers' Requests for Leave under Rule 59E decides this appeal. The Court has decided to place this Rule 59E Post Judge Merit Request for Leave to amend using the liberal plebeian standard articulated under this Court's jurisprudence about Rule 15A2. In that standard, requests for leave should be freely granted or freely given unless there is substantial reason for denial. One of the things we can consider is diligence, correct? I'm sorry, Your Honor? One of the things we can consider is diligence, correct? Yes, Your Honor, as part of undue delay. And I think that... The undue delay, I'll return to that in a moment, but diligence is part of it, but it's prejudicial diligence or diligence that imposes unwarranted burdens on the court. To me, this is post-judgment. This is not while the case is... before you've gotten to the judgment stage. So it seems to me there's... although you apply Rule 15 standard, there's certainly a gloss on that when you're in a post-judgment proceeding. Do you agree or disagree? I respectfully disagree. I think... What's your best case that says that? I think the Sui case from this Court in 1981 freely applied the liberal plebeian standard articulated under 15A2. That was a case that was dismissed... The plaintiff sought leave to amend, laid in the case to amend, to add a new conspiracy defendant. This Court carefully analyzed the Supreme Court's case in Fomin and found that undue delay... it can't just be delay alone. It's got to be an unwarranted burden on the court or a delay that's prejudicial to the non-moving party. So the Court went through the factors there and did not find any tactical maneuvering or bad faith or any pleading of theory seriatim, which would be pleading a new party or a new claim or a new legal theory only after the first... Here's my question. This is kind of foreign to me, this whole notion that you can go through a trial in federal court and have a... let's say you have a pretrial order, so you must do this, must amend, must... by a certain date, must appoint experts, all these deadlines. And then we come up to a judgment. And then post-judgment, a party under Rule 59 or 60 says, I want to amend my complaint to say something else. It seems to me that's got to be in a different posture than a pure Rule 15. I agree with that because the case has proceeded along, there's been various determinations, there's pretrial, there's discovery that's happened. All those things are sub-costs at that point and it's wasteful just to completely start a new case at that point. Here, we were just at the motion to dismiss phase, there was not a scheduling order, there was not discovery, we weren't anywhere near summary judgment. So I think, as the case proceeds, I think that there is more potential for procedural, fatal procedural delay, but when this case is just in its beginning, I don't think that is present here. But I'd like to return to something I mentioned in the beginning and that's the District Court's order in this case. I think it's clear from the base of the record that the District Court applied the exacting Rule 1590 standard that this Court generally applies to those motions and not the Rule 1582 standard under which leave to amend should be freely given. The District Court said that there is not a manifest error of law or fact for any newly discovered evidence or argument that could not have been raised prior to dismissal to justify the extraordinary leave authorized by Rule 1590. So I think, and there's nothing there about granting leave to amend, further granting leave to amend or any of the articulated substantial factors for denial. So the District Court there applied the wrong standard and that applied the wrong legal standards and abuse of discretion under this Court's law and there's a well-established rule in this circuit that if the District Court makes an error of law and does not reach the right issue that this Court will re-manage and the District Court will decide the issue in the first instance and not take a crack at it itself. And that principle decides this case. Is it correct that your client did not amend for a period of six months after saying it would amend? That's correct, Your Honor. I think, but with some additional detail, I think in the first pre-motion conference, Counsel for Farmers stated that he had been discussing pre-motion letters with at least one defendant, maybe others too, and that he would, first amending complaint would be forthcoming. There was another scheduling conference, or if there's an initial conference scheduled in November of 2022, the parties arrived and not everyone had been served at that point, so that conference got pushed to February of 2023 and then at that conference, the magistrate judge said, hey, I'll give you a couple more weeks to file your first amendment complaint as of right and then that's what Farmers did. So there was a delay. I agree there were six months in between filing the October conference and the February filing the first amendment complaint, but I think that's just a product of what was going on with the parties and the scheduling for the case. But I'd like to keep going on this undue delay point. As I mentioned before, delay alone is not sufficient. It has to be delay that's undue in the sense that it's imposing unwarranted burdens on the court, it's wasting the court's time and resources, or it's prejudicial to the other side in that it prevents the other side from being able to litigate its case fairly and efficiently and neither is present here. What was the reason for the delay? I mean, I know you said, well, only four defendants, I think you said, responded to our initial request for information, but you started out by saying your very first salvo was the fraud was so apparent. If that's true, why couldn't you clearly allege that in your original or certainly your first amendment complaint? Your Honor, the ground on which this case was ultimately dismissed was not whether fraud had been adequately pleaded, it was whether an association, in fact, for eco-enterprise had been pleaded. So I think that we, the farmers, to the extent it was discussing the apparent fraud, I think all that detail was in there. What the district court ultimately determined was that the pleadings were not sufficient to talk about the relationships or the consensual decision-making structure as necessary to support a reco-backed enterprise. So I think those are different issues and farmers, in good faith, believe that its first amendment complaint was sufficient and stated a plausible reco-claim and it hadn't had any guidance from the district court at that point. It didn't just reflexively amend to address all of the points raised in the various defendants' motions to dismiss and as soon as the district court's order ultimately came out, it promptly amended to address, or sought to amend to address that defect. So there's not any bad faith in there or anything that I think is out of the ordinary and I think it also bears noting that one of the grounds that were presented by defendants was that a reco-enterprise must have a separate purpose aside from racketeering activity and the district court ultimately rejected that. So I think at least in that instance it was correct for farmers not to just amend right away to address everything and take a step back. Rule 59E uses the Rule 15A liberal pleading standard even though a judgment's been entered. So in most of the instances in which a court is considering whether a leave should be granted under 59E, we already have a dismissal from a district court and there is, in most of those cases, likely an opportunity to plead some of the facts earlier. But that doesn't mean that the whole case is sunk on that point. And I'd like to contrast what we have here with the bulk of the cases that defendants cite in their brief and those are cases where parties are substantially delaying the prosecution of the case and then seeking to seek leave to amend for new parties, new legal theories, or new claims. And that's at the core of this court's undue delay analysis ever since the sui. And I think that that is just not present here. We don't have farmers trying to... Farmers have been pleading a RICO claim and a money hadn't received claim throughout the entire litigation. They haven't tried to bring in any new theories or new legal theories. And the first request to leave, which is at issue here, was simply to add more detail about the essential decision-making structure for the RICO enterprise. So I don't think that there's any influence that farmers was engaging in gainful tactical delay and didn't gain anything from the timing here. And relatedly, to the extent that the defendants present farmers' supposed bad faith or dilatory motive as a reason for the not okay here, I think that is encompassed under the general undue delay umbrella. I think, as the sui case explained, the bad faith or dilatory motive is a type of delay that is designed to get a tactical advantage for the plaintiff. And again, this is not what we have here. Turning to prejudice, this court has once said that prejudice is the touchstone of the Rule 1582 analysis. And that's prejudice in the sense that Harvey can't prosecute the case efficiently, has wasted discovery, or is surprised by new claims at the last minute. And the defendants here haven't presented any of those kinds of prejudice to them. They haven't raised that in their brief. I think that's quite telling. And there isn't any prejudice to them either. Like I mentioned in this case, it's the very beginning phases. There hasn't been a scheduling order or any discovery. There hasn't been any wasted effort. There won't be any duplication if this case is reopened and farmers is granted leave to amend. And I'd lastly just like to talk about the proposed amendment not being futile. The proposed Second Amendment complaint sufficiently describes the association and the fact that the enterprise at issue here includes relationships among the defendants and a consensual decision-making structure in which the Gwen brothers and their company, First Choice, direct the scheme, oversee all the billing and records, and tell the provider and clinic defendants how to generate these fraudulent bills, how to send them back to the Gwen brothers and control the scheme. So I don't think there's any evidence. We haven't pleaded it, that they're just going about their separate business activities. They're engaging in a common course of conduct with the purpose of defrauding farmers and obtaining these deflated settlement payments. And I'd like to point to this court's decision in Allstate playing back from 10 years ago. The scheme was highly similar there. It was also involving chiropractors who were billing for unnecessary treatment or submitting those claims to Allstate and through attorneys and then having Allstate pay inflated settlements back. And considering reviewing a jury verdict in favor of Allstate there, this court held that Allstate had adequately pleaded and proved a RICO Association FACT enterprise based on that group of chiropractors. So I think that the Association FACT theory here is not breaking any new grounds. It's been recognized. This type of scheme has been recognized to be a RICO enterprise for over a decade now in this court. And I'd also like to discuss plaintiff's participation in this scheme. As I mentioned, the Gwen brothers and First Choice are the leaders of the scheme and give direction to the provider defendants and the clinic defendants. And those defendants follow the direction. That's all that's needed under this free force decision in Revis. And they're doing this knowingly and they're following direction. So that satisfies participation. And last is proximate causation. The entire purpose of the scheme was to defraud farmers through these inflated bills. And we pleaded that it did, in fact, do that. The scheme was successful. Under the Allstate v. Planbeck case, that is sufficient for causation. So for all these reasons, if the court decides to decide 1582, apply the 1582 standard itself, may I finish? Yes. It should grant farmers a request for leave to amend remand to the district court. All right, thank you. You've saved time for rebuttal? Yes. Five minutes. Ms. White? Thank you, Your Honor. Kelsey White on behalf of the appellees. May it please the court. The court should affirm, and I'd like to start with the district court order and why this court can affirm based on whether the district court did. And then I'll move to why this court can affirm even if the court finds something wrong with the district court order. As Farmers Council argued, the operative sentence in the district court's order, and it's at ROA 2232, that we will learn, is, but plaintiffs failed to demonstrate why the proposed amended allegations could not have been raised prior to the entry of judgment. In our view, this is the district court ruling that the plaintiffs exercised undue delay in amending. Now, what Farmers says is that's an application of the Rule 59 and Rule 60 standard, and that's error. But I think when the court looks at the record and the arguments that are presented to the district court, the defendants argued that in this context, under Rule 59 and Rule 60, the district court applies the Rule 15a standard. That was presented to the district court by multiple defendants, Dr. Chin, Complete Pain, the radiologist, and the first-choice defendants. The defendants also cited a case called Rosenblatt, and it is a Fifth Circuit case published where this exact language that we see the district court using, the Fifth Circuit used in affirming a district court's denial of leave to amend after dismissal. So in Rosenblatt, this court said, we have consistently upheld the denial of leave to amend where the party seeking to amend has not clearly established they could not reasonably have raised a new matter prior to the trial court's merits ruling. And that's at 420 of Rosenblatt. And so when you look at the arguments that were made to the district court, I think the sentence that I've read from the district court's opinion is the district court applying the 15a standard, applying Rosenblatt, and saying under the 15a standard, I'm denying this. And what Farmers is really doing is imposing a sort of magic words requirement where the district court would have had to specifically say, undo delay. And I think when you look at what the court wrote, the court was trying to rule on the arguments that had been put before it, which were arguments under Rule 15a. I think that alone would allow the court to affirm. And I'll note that Rosenblatt, which was mentioned in the district court, we mentioned in our brief on appeal, Farmers really has no response to Rosenblatt. Farmers argues that Rosenblatt is a case where the amendment was going to add a new cause of action. And actually Rosenblatt involved the plaintiff there trying to add factual allegations to support a RISA claim that had always been in the case. And so just like we have here, where Farmers is saying, yes, the case has been dismissed, but we now like to add more factual detail to address the deficiencies we've been on notice of for months. That's exactly what happened in Rosenblatt in that he was trying to add factual allegations to support his RISA claim. And in that context, the Fifth Circuit said, the district court did not abuse its discretion in denying leave to amend. And so I think just under Rosenblatt alone, this court could affirm what the district court did. And the other case I would cite the court to on this initial argument that the district court hasn't actually aired is the Disney case, which actually was cited by Farmers. It's one of the QTAM type cases, so it's U.S., XREL, Disney. And there the court applied the Rule 59 and Rule 15 standards. And this court noted that the court, the district court's reasoning would apply to both. The district court applied reasoning that answered the question under either standard, and so the court affirmed. And so that is what I am arguing here, that the district court did not air. The district court was presented with Rule 15 arguments, Rule 15A arguments, and it ruled on that. Even if, however, the court disagreed with the reading of the district court's order that we're offering, this court can affirm, based on the bulk of cases where this court has looked at whether there are reasons readily apparent in the record that allow affirmance. And this standard of review typically comes up because the district court has offered no reasons for denial of leave to amend. And in that context, this court just looks at the record and says, is there a reason that we can see that's undue delay or one of the reasons to sue? Farmers' response to these cases is simply that, well, those cases involve a district court saying nothing. And here we have a district court saying something, but we think what he said is wrong. That's the distinction we'd like the court to draw, which would mean this court would apply a different review when a district court denied with no explanation than when a district court denied with an explanation that was error. There's no other area, and I looked, where the court would distinguish like that between a district court order giving no explanation versus an explanation that's wrong. And the real problem with that distinction, practically speaking, is that in Desui, this court said we want district courts to give us explicit reasons for denying leave to amend. And by giving a more deferential standard when they say nothing, this court would be incentivizing the opposite. So from our perspective, the cases like Allen, Southmark, and Quest, where this court said, we're going to look at the record ourselves, and if there are reasons that are readily apparent as to why the denial occurred, then we will affirm. And we would argue that's the exact same standard that this court should use here. This court should not invent a new standard, which is we're going to remand for the district court to do his own Rule 15a analysis, and then we can come back to the appellate court on that. And even the case with the Fayside asking for that relief, North Cyprus and Solace did not involve that procedural roundabout. That is a new thing. There is no case they're citing this court that would support that relief. I'd like to speak just a little bit on undue delay. I do think under the cases of this circuit, we have undue delay here. The farmers was first put on notice of the defects with their allegations of a RICO enterprise in October of 2022 at the earliest, and with detail in December of 2022. At that time, at each of the hearings in court with the district court, farmers said, we have a First Amendment complaint that's coming that's going to address these issues, these pre-motion letters. They finally filed that First Amendment complaint February 28th of 2023, which was actually four days after the district court had told them they needed to file it, and then the defendants filed their motions to dismiss. They then did not respond to the motions to dismiss, so they had to end up moving for leave to file out-of-time responses. There was also delay, if I go back in time, the last defendant didn't get served until five months after this lawsuit was filed. So we've seen a dragging of feet throughout the district court record. That delay is undue. They have offered no explanation for it. And so the question from our side is, farmers recognize this, that leave to amend is not automatic, but they actually give the court no reason why they should get it here. It's different from any other case. It would become automatic, because they're arguing that if you're told of deficiencies with your complaint, you oppose a motion to dismiss, and you lose, you should still get a chance after dismissal to amend without any explanation as to why you've gotten yourself in that situation. And that's directly contrary to this court's opinions in Quest, for example, in Rose and Black, which I already mentioned, but in Quest, the plaintiff didn't amend for 11 months while the motion to dismiss was pending. We have here, the motion to dismiss was pending, there were various motions to dismiss, but in April and May of 2023, and they don't ask for leave until after March of 2024 when the case has been dismissed, so a year on the outside. So the precedent from this court supports that this is unfeasible right here. And the last couple of comments I'd like to make are just on, and less important questions, on the problems with their articulation of how Rule 15a would work in the post-dismissal context. So I mentioned the distinction they're trying to draw between when a district court says no reason versus gives a reason but a wrong one, that distinction really doesn't hold up. The second problem, though, is their articulation of prejudice. So they've argued that for us to have shown prejudice, the court should look at whether prejudice exists based on cases where the case was ongoing when the amendment was sought. So is the amendment closed to trial? Has discovery closed when the amendment was sought? Those types of prejudice are not going to exist in a post-dismissal context. We're not on the eve of trial if we obtain dismissal on the plea case. So I think, and what I'd offer the court, is that in this context, the prejudice inquiry, and I'll find the case in just a second, we cited it in our brief, one way it's been articulated is that prejudice can be an unwarranted burden imposed on the court, and I think this case is an example of that. They were given pre-motion letters, they had initial conferences where they were apprised of the issues, they had an oral hearing, and they now want to try again. And there's no automatic right under the rule for the court to have to indulge their repeated request to try and try again. The last point I'll make is just on Planbeck, and it's brief. This case is not like Planbeck, and this came up in the district court. The difference between this case and Planbeck, there are two, actually. In Planbeck, the defendant, Planbeck, actually had his hands in every part of the scheme. So he owned the telemarketer company, he owned the chiropractic clinic, he owned the companies that funded the law firm. So you had one person who actually was controlling everything. They're not alleged here. And even now that they've tried with their second amendment complaint, what they've added are compulsory allegations that are just reciting the legal standard, not actual facts. And then the second distinction with Planbeck is that there's an extra link in the chain here where their theory is that these medical providers gave these allegedly fraudulent records to personal injury attorneys who then used them to negotiate settlements. In Planbeck, Planbeck's fraudulent bills were being submitted directly to the insurance companies themselves. So there's a tighter causation analysis as well. I don't think the court needs to reach this today. I think the court can affirm on the district court's exercise of its discretion. But to the extent that Farmers is trying to argue that an amendment would not be futile because they fit right within Planbeck, they do. And unless the court has other questions, or I'll make just one other comment. I'm sorry, because I'm actually arguing on behalf of all of the appellees. For certain of them, complete pain, Dr. Chen, the radiologist, Dr. Dang, Dr. Porter, they are not mentioned with any detail at all in the complaint. And so while I think the court can affirm across the board, as to all the appellees, there are certain appellees whom at the district court they were alerted that they did not have sufficient allegations. They still have not addressed those in the second amendment complaint and it is certainly futile as to those defendants. But now, unless the court has other questions, I'll yield back my time. All right, thank you, Ms. White. Thank you. Okay, for Ravel. Ravel. So I just wanted to raise a few points. And I'd like to just start with what the district court did here in denying farmers request relief to amend under rule 59E. I think, look at the language of the order, which says that rule 59E relief is to be granted sparingly. It's extraordinary relief and that the court found that there was not a manifest error of law or fact or any newly discovered evidence that could have been raised earlier. That matches exactly onto how this court has described the general rule 59E standard. And I'll also point out that in the motions to dismiss or the motions, their objections to reconsideration, there were defendants that argued that this more exacting rule 59E standard should govern the analysis here. So it didn't just come out of left field or anything like that. And I also want to touch on something opposing counsel said about the difference between, there being no difference between a court not explaining its rationale for denying relief to amend and providing an affirmably erroneous one. I think if the court looks at the case law saying that it can affirm if there's ample and obvious grounds to leave to amend, it's okay that the district court didn't expressly say it's rape reasoning. The idea there is that the district court probably relied on that. We can assume that there's no abuse of discretion, but we have a order that's flatly wrong in terms of the legal standard. I think there's no question that there was legal error. It was an abuse of discretion as a matter of law and under the well-established rule, the circuit, it should go back down to the district court to apply the Rule 15A2 standard in the first instance. But I also want to make clear that if the court, we believe that we succeed under the Rule 15A2 standard as it is if this court decides to consider that. And I'd just like to address, I guess, one of the main points that defendant's counsel raised about Rosenblatt case and these various other cases saying that if you haven't pleaded something right away, then it's enough, or that not only should it be upheld. I think that, first of all, the Rosenblatt case, it wasn't a new claim necessarily, but it was a brand new legal theory. The plaintiff there had proceeded on a certain argument in terms of how he was deprived of his ERISA benefits and then after dismissal, pivoted to something completely different and that's what the court found was problematic there. And in the Quest case, I think it was notable that this court found it notable that the plaintiff didn't include a proposed amended complaint as part of the motion for leave or the request for leave. So there was more of a show of just lack of diligence and not being serious about prosecuting the case. And I'd also point out too that in general, in their brief, defendants can see that Rule 1582 standard does apply in Rule 5090, request for leave to amend, and this court has applied them relatively interchangeably. I understand that there can be, I wouldn't say it's a gloss, but the more time the case is preceded, the more likely there is to be prejudice or undue delay or things of that nature, but I think that it's still within that same analysis. So we don't think that the court should even get to the Rule 1582 analysis and should simply remand for the district court to apply the correct 1582 standard in the first instance, but if the court decides to perform that analysis, the liberal pleading standard and also leave standard and the lack of anything extreme or unusual or highly damaging here counsels that farmers should be granted leave to amend their complaint. Thank you. All right, thank you. Your case and all of today's cases are under submission and the court is in recess until 9 o'clock tomorrow.